# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **HORACE GRIFFIN**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 14 C 1182 |
| **CAROLYN COLVIN**, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Horace Griffin ("Griffin") seeks judicial review pursuant to the Social Security Act ("Act"), more specifically 42 U.S.C. § 1383(c)(3),[1] of the final decision by Acting Commissioner of Social Security Carolyn Colvin ("Commissioner") that denied Griffin's claim for supplemental security income under Title XVI of the Act. Griffin and Commissioner have filed cross-motions for summary judgment under Fed. R. Civ. P. ("Rule") 56. Griffin asks this Court to reverse Commissioner's decision and award benefits to Griffin or, in the alternative, to remand the case for further proceedings. Commissioner's motion asks this Court to affirm her denial of benefits. For the reasons stated in this memorandum opinion and order ("Opinion"), Commissioner's motion is denied, Griffin's motion is denied in part and granted in part, and the case is remanded for further proceedings consistent with this Opinion.

---

[1] All further statutory references will take the form "Section --," using the Title 42 numbering rather than the Act's internal numbering. All portions of 20 C.F.R. will be cited "Reg. § --."

## Procedural Background

Griffin filed an application for supplemental security income ("SSI") on August 11, 2011, alleging a disability onset date of June 1, 2006 (R. 23). Those applications were denied on November 1, 2011 and again upon reconsideration on March 1, 2012 (id.). Griffin then made a timely filing for a hearing, and Administrative Law Judge Jose Anglada ("ALJ Anglada" or simply "the ALJ") held a hearing on November 5, 2012. On December 13, 2012 the ALJ issued a decision denying Griffin's application (R. 33). Griffin requested review from the Appeals Council, but it denied his request for review on January 8, 2014 (R. 1). Thus ALJ Anglada's opinion represents Commissioner's final decision.

## Factual Background

Griffin, born April 5, 1954, was 58 years old on the hearing date (R. 164). He is married but separated from his wife (he lives with his cousin (R. 45)) and has two adult children, as well as grandchildren and great-grandchildren (R. 44-45, 73). Griffin, who has a high school education (R. 45), has not had gainful employment in at least ten years (R. 178). His sole income consists of small payment of a few dollars from friends and neighbors that he receives for doing tasks such as bringing them an item from the corner store (R. 58).

Griffin suffers from hepatitis C, neuralgic pain, joint pain and an enlarged prostate (R. 25, 74-75). Although he was a longtime heroin and methadone abuser, he recently detoxed and is now sober (R. 70-72, 395).

At the hearing Griffin testified that he suffers from a tingling-like pain in his feet, arms and hands and that he has long suffered from joint pain in those same extremities (R. 67, 78-81). Examining physician Jaroslav Goldman, M.D., had recently diagnosed that pain as neuropathy caused by hepatitis (R. 80-81, 571). Such pain prevents Griffin from standing for long periods or

from walking more than two or three blocks at a time, he said (R. 53, 81). Griffin also testified that one of the medications used to treat his hepatitis -- a shot he administers to his own abdomen once a week -- leaves him so nauseous that he eats only one meal a day during three to four days each week (R. 49-51, 68). He also reported disabling fatigue, a combination of nighttime sleeplessness and daytime drowsiness, as well as persistent flu-like symptoms such as aches and pains (R. 48-49, 79). As for his prostate problems, Griffin testified that he needs to urinate five to six times daily, as well as multiple times each night (R. 77). And he stated that he has not used heroin or methadone since detoxing under hospital care in December 2011 (R. 72-73).

No medical expert testified at the hearing, but vocational expert Thomas Alan Gusloff ("Gusloff") did. Gusloff testified as to a hypothetical worker who could perform only unskilled work at no more than a medium exertional level (R. 82-83). He stated that such a worker would need to be on task at least 85% of the time -- otherwise no work would be available to that worker in the national economy (R. 86). Similarly, a "pattern of two days or more" absence per 30-day period would cause such a disabled worker to be unable to find and retain any employment (R. 87). And needing to take unpredictable breaks to urinate 5 to 6 times a day would "interfere with these or any other job" (R. 88).

Documentary evidence was somewhat scant. What evidence there was indicated that Griffin did indeed suffer from hepatitis C, neuralgia and other pain, prostate problems and a history of substance abuse (e.g. R. 349, 395, 430, 568, 571). But there is very little as far as medical records go that documents functional limitations, and indeed two state agency doctors deemed Griffin capable of medium work within the meaning of the Social Security regulations (R. 393, 556). Still, notes from Dr. Goldman do record Griffin's complaints of fatigue and pain (R. 570-71). And treating physician Olga Lansky, M.D., responded to two questions after the

hearing by writing, "He will have difficulties to sustain full time work due to disease progression, persistent fatigue and malaise and [indecipherable] complications of chronic liver disease" (R. 580).

## **ALJ Opinion**

ALJ Anglada made these findings (paraphrased here, except when the particular words the ALJ used are important):

1. Griffin had not engaged in substantial gainful activity since August 11, 2011 (R. 25).

2. Griffin had these severe impairments: hepatitis C, arthritis and substance abuse (id.).

3. None of those impairments met the listing requirements in Reg. § 404, Subpt. P, App. 1 (id.).

4. Griffin had a residual functional capacity ("RFC") that enabled him to perform medium work with limitations related to working at heights, climbing ladders and being on task no more than 96% of the time (R. 27).

5. Griffin had no past relevant work (R. 31).

6. Griffin was an individual of advanced age at the time of application who had a high school education and could communicate in English (id.).

7. Griffin could perform a significant number of jobs in the national economy (id.) and was therefore not disabled (R. 32).

What follows here addresses the validity and effect of those findings.

## Standard of Review and Applicable Law

This Court reviews the ALJ's decision as Commissioner's final decision, considering the legal conclusions de novo (Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005)). Hence rejection is required if the ALJ has committed an error of law, regardless of how much evidence supports his or her factual findings (see Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997)). By contrast, factual determinations receive deferential review, and courts may therefore not "reweigh the evidence or substitute [their] own judgment for that of the ALJ" but will affirm Commissioner's decision "if it is supported by substantial evidence" (id.). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted)).

Credibility determinations receive an even more deferential review. Courts can reverse or vacate an ALJ's credibility findings only when the findings are "patently wrong" (Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008)). Still, ALJs commit reversible error when they ground their credibility determinations upon "errors of fact or logic" (Allord v. Barnhart, 455 F.3d 818, 821 (7th Cir. 2006)).

As cases such as Haynes, 416 F.3d at 626 (internal quotation marks and citation omitted) teach:

> In rendering a decision, the ALJ must build a logical bridge from the evidence to his conclusion. The ALJ need not, however, provide a complete written evaluation of every piece of testimony and evidence.

Hence "[i]f the Commissioner's decision lacks adequate discussion of the issues, it will be remanded" (Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009)).

To qualify for benefits a claimant must be "disabled" within the meaning of the Act (<u>Liskowitz v. Astrue</u>, 559 F.3d 736, 739 (7th Cir. 2009)). Disability is defined in Section 1382c(a)(3)(A) as being "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

<u>Knight v. Chater</u>, 55 F.3d 309, 313 (7th Cir.1995) sets out the often repeated regulation-prescribed five-step inquiry for determining whether a claimant is disabled:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals one of the impairments listed by the [Act], <u>see</u> 20 C.F.R. § 404, Subpt. P, App. 1;
(4) whether the claimant can perform [his] past work; and
(5) whether the claimant is capable of performing work in the national economy.

For Griffin's supplemental security income application, he can establish disability at any time between his application date of November 2, 2011 and the present (see Reg. §§ 416.200, 416.202(g)).

## **Remand Required**

Remand is clearly required because ALJ Anglada failed to address in any meaningful way either the opinion of Griffin's treating physician Dr. Lansky or Griffin's complaints of fatigue, about which he testified at length. While such errors committed by the ALJ are not technically a basis for remand, he also made several fundamental errors of logic in his

determination that Griffin's complaints of pain were not credible.[2]  To avoid a second remand -- or an outright reversal -- those errors should also be corrected when the ALJ reconsiders Griffin's case.

First off, ALJ Anglada totally failed to address the opinion of Griffin's treating physician Dr. Lansky.  That would usually be enough to require remand (see, e.g., Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011) and Reg. § 416.927(c)).  But Commissioner asserts that here no remand is required because the ALJ (tacitly, apparently) rejected Dr. Lansky's opinion on the grounds that it was vague (C. Mem. 4).

There are multiple problems with Commissioner's argument.  First, raising such an argument at this stage violates the principle set forth in SEC v. Chenery, 318 U.S. 80, 87-88 (1943) that the government may not advance on appeal different arguments from those set out by the government's administrative decisionmaker in the first instance.[3]  Second, ALJs are not permitted to reject treating physicians' opinions tacitly -- Commissioner's own regulations require ALJs to "give good reasons" for such a decision (Reg. § 416.927(c)(2)).  Third and finally, the law of this Circuit requires ALJs to communicate with a claimant's treating physician for clarification when that physician has offered an ambiguous opinion directly addressing questions reserved for Commissioner, such as whether the claimant is disabled (Barnett v.

---

[2]  Because the ALJ failed to develop the record properly, as will be seen, a new credibility determination will necessarily have to be performed on remand in light of the new evidence to be received then.

[3]  Our Court of Appeals recently warned that the United States Attorney's incessant flouting of Chenery in Social Security disability appeals "is professional misconduct and if it continues we'll have to impose sanctions" (Hanson v. Colvin, 760 F.3d 759, 762 (7th Cir. 2014)). Because that forward-looking shot across the bow antedated the Commissioner's Rule 56 memorandum in this case by just nine days (scarcely enough for the warning to have percolated through the ranks), no consideration of imposing such sanctions is appropriate here.

Barnhart, 381 F.3d 664, 669 (7th Cir. 2004), citing SSR 96-5p). Because Dr. Lansky's terse opinion that Griffin "will have difficulties to sustain full-time work" (R. 580) is both ambiguous and embraces the ultimate issue of disability, there can be no getting around a remand here.[4] ALJ Anglada will have to re-contact Dr. Lansky to clarify what functional limitations she believes Griffin has, and what she meant by "difficulties to sustain full-time work."

As for Griffin's complaints of fatigue, the ALJ also gave them no meaningful treatment. It would be enough to mandate a remand that the ALJ did not conduct an adequate discussion of the issues (see Villano, 556 F.3d at 562). Although remand is required for that reason alone, the next paragraph explains another error that independently calls for the case to be sent back to the ALJ.

Griffin ascribed his fatigue (which included complaints of nocturnal sleeplessness and diurnal exhaustion) in part to side effects from his numerous medications (R. 48-51, 65-68). As this Court recently had occasion to point out in Prate v. Colvin, --- F. Supp. 2d ---, 2014 WL 4823797 at *12 (N.D. Ill. Sept. 29), Social Security Ruling 96-7p makes the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" a mandatory subject of inquiry in determining disability, at least when subjective complaints such as pain and fatigue are concerned. Because Griffin testified at length about the side effects of his medication (R. 48-52, 68, 79),[5] the ALJ was required to consider them. He did not, and so a remand is required for that reason as well.

---

[4] This Court finds that Dr. Lansky's opinion, while certainly tending to support Griffin's position, is not the kind of conclusive evidence required to establish disability as a matter of law so as to warrant outright reversal.

[5] Such side effects included not just fatigue but nausea and loss of appetite.

## **Further Guidance on Remand**

Such are the grounds for remand. But this Court would be remiss not to correct certain obvious errors in the ALJ's determination as to the credibility of Griffin's complaints of severe neurological and joint pain. It is to be hoped that this Court's doing so will prevent those mistakes from being repeated, thereby avoiding a potential second appeal to the district court and a second remand.

As to those complaints of pain, the ALJ first remarked that the record lacked evidence of emergency room treatment, hospitalization, studies or therapies typical of claimants with disabling pain (R. 30). But Griffin's access to health insurance was apparently spotty (R. 228, 395). Lack of insurance is a factor that ALJs should typically consider when confronted with a claimant's failure to seek treatment (see Jelinek v. Astrue, 662 F.3d 805, 814 (7th Cir. 2011)), and ALJ Anglada did not do so. That oversight should be corrected on remand.

Second, the ALJ called it "striking" that Griffin was diagnosed with neuropathy despite displaying normal motor function (R. 30). But there is no medical evidence of record to indicate that hepatitis-induced neuropathy is typically comorbid with motor loss, with the result that an absence of motor loss would be suspicious. To the contrary, Griffin's attorney, apparently attempting to allay the ALJ's doubts, submitted articles after the hearing suggesting such comorbidity is not typical in hepatitis patients (e.g. R. 574). As it stands, the ALJ impermissibly "played doctor," making the kind of medical judgment that the law reserves for medical professionals (see, e.g., Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)). On remand the ALJ can either consult with a medical expert on that subject or include the question in a follow-up discussion with Dr. Lansky.

Third, at times the ALJ seemed to discount later medical records by referring to earlier ones (e.g. R. 28-29). But Dr. Lansky's opinion included a reference to "disease progression" (R. 580). If Griffin's liver disease was in fact progressing, it would be patently illogical to discount more recent complaints simply because they did not accord with earlier medical records (cf. Scrogham v. Colvin, 765 F.3d 685, 699 (7th Cir. 2014)). So when Dr. Lansky is called on for clarification on remand, she should also be asked to clarify her comment about disease progression.

Finally, the ALJ discredited Griffin's complaints about pain in part because he does not take powerful opioid pain medications (R. 30). But neither logic nor fairness can permit that to count against Griffin -- he is an admitted lifelong opiate abuser who only recently set out on the path of sobriety (R. 71-73). Both that oversight and the previously cited errors must be clarified on remand, while Dr. Lansky's clarified opinion will call for a fresh look at the overall credibility analysis of Griffin's testimony.

## **Conclusion**

Because neither party has demonstrated an entitlement to a ruling in his or its favor as a matter of law, both of those Rule 56 motions [Dkt. 14 and Dkt. 16] are denied. But because the ALJ's ruling made a critical error of law at the outset, a remand of the case is necessary and is hereby ordered. But something more needs to be added in that respect.

Only a small percentage of this Court's caseload (and that of its colleagues) involves Social Security disability appeals. That being so, it is remarkable that another of ALJ Anglada's cases required a remand from this Court only last month in Wilson v. Colvin, --- F. Supp. 3d ---, 2014 WL 4803026 (N.D. Ill. September 29). While the stunning backlog of cases that Social

Security ALJs must grapple with certainly inspires deep sympathy,[6] that cannot excuse the repeated failure to comply with Social Security regulations or the law of this Circuit in deciding disability cases. Accordingly this Court makes a strong recommendation that Commissioner give consideration to assigning the case on remand to a different ALJ (see, e.g., Sarchet v. Chater, 78 F.3d 305, 309 (7th Cir. 1996), delivering a message given there and all too often since then by our Court of Appeals).

                                                                            _____
                                                                            Milton I. Shadur
                                                                            Senior United States District Judge

Date: October 28, 2014

---

[6] Just ten days ago it was reported that nearly one million cases await decision by Social Security ALJs and that those ALJs were only recently relieved of an obligation to decide 500 cases per year (David A. Fahrenthold, Appeals for Disability Claims Create Biggest Federal Backlog, Washington Post, October 18, 2014 available at http://www.washingtonpost.com/sf/ national/ 2014/10/18/the-biggest-backlog-in-the-federal-government/).